**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | CASE Nos. : 2:13-CR-105 |
| | : | 2:14-CR-052 |
| vs. | : | |
| | : | |
| ADDISON R. RICHARDSON | : | JUDGE EDMUND A. SARGUS |
| | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through undersigned counsel, hereby submits its Memorandum in Aid of Sentencing, as ordered by the Court and in response to the defendant's Amended Sentencing Memorandum.

**BACKGROUND**

On January 30, 2014, the defendant, Addison R. Richardson, entered a plea of guilty, pursuant to a plea agreement, to Count Two of an Indictment, which charged him with coercion and enticement of a minor to engage in illegal sexual activity in violation of 18 U.S.C. § 2442(b), in the Northern District of Ohio; and to Count One of an Indictment, which charged him with attempted coercion and enticement of a minor to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422(b), in the Southern District of Ohio.  During the plea colloquy, the defendant admitted to using the internet and a cellular phone to engage in sexual conversations with a 14-year-old boy who resided in the Northern District of Ohio, and that he travelled to a residence in the Northern District where he engaged in sexual activity with the boy.  During the conversations with the boy, the defendant requested that the boy send nude photographs of himself and the boy complied.  The defendant further admitted that he had communicated via e-mail and text message with an undercover officer posing as the father of 14 and 9-year-old boys, that during

those communications, he had indicated his desire to engage in various illegal sexual acts with the minor children, and that he had travelled to Columbus, Ohio for the purpose of engaging in those sex acts with the children. Finally, the defendant admitted that the Apple i-phone that he possessed at the time he was arrested in Columbus, Ohio contained numerous child pornography images and videos and text messages with other individuals with whom the defendant had communicated about engaging in sexual activity with minors.

The final revised Presentence Investigation Report ("PSR") was disclosed by the probation office on March 20, 2014. The defendant filed a sentencing memorandum ("Defendant's Sentencing Memo") on March 31, 2014, and sentencing in this case is now scheduled for April17, 2014.

## **PRESENTENCE INVESTIGATION REPORT AND RECOMMENDATION**

The United States has reviewed the Presentence Investigation Report ("PSR") in this case and submits that the advisory guideline sentencing range calculated by the Probation Officer is technically accurate. The United States thus raises no objections to the PSR. The Probation Officer has determined that the advisory guideline range for the defendant is 262 to 327 months, based on a total offense level 39 and a criminal history category I. There are no factors identified in the PSR that warrant departure from the applicable guideline range. The Probation Officer has indicated that the Court may wish to consider the following factors as possible bases for deviation from the guidelines range: (1) the defendant's education and employment history; (2) his "idyllic upbringing" and supportive family; and (3) the serious nature of the defendant's offenses, including his sexual contact with a minor. The sentence recommended by the Probation Officer is 262 months on each count to be served concurrently, which represents a

sentence at the bottom of the applicable guideline range as calculated in the PSR. The Probation Officer has further recommended a term of supervised release of 10 years.

The defense submitted an objection to the guidelines calculation contained in the PSR related to the creation of "pseudo-counts," which the probation officer created pursuant to U.S.S.G. §§ 2G1.3(d)(1) 3D1.4, due to the fact that there were two fictitious minor victims of the offense in the Southern District count. The government has reviewed § 2G1.3(d)(1) and all application notes and definitions pertaining to that guideline section. The government's review of these provisions has been inconclusive in regards to the question of the applicability of § 2G1.3(d)(1) in circumstances involving fictitious minors.[1] The government posits that, based on the language of the guideline, both the defendant's position that § 2G1.3(d)(1) does not apply and the Probation Officer's position that it is applicable are reasonable readings of the guideline. However, the government concedes that the creation of "pseudo-counts" pursuant to § 2G1.3(d)(1) under the specific circumstances of this case is inappropriate, and thus concurs with the position of the defendant on this specific issue.[2]

In light of the foregoing, the government submits that the proper guideline range in this case, without the multiple-count adjustment for the "pseudo-counts" pursuant to § 2G1.3(d)(1), is 210 to 268 months, based on a total offense level of 37 and a criminal history category I.

---

[1] The government notes that the objection relates only to the creation of a "pseudo-count" for the two fictitious minors and not the multiple count adjustment for the two separate offenses to which the defendant pled guilty. The parties agree that the Probation Officer was correct in not grouping the two offenses of conviction, because they involved two separate victims and offenses.

[2] The Court is now likely familiar with the arguments raised in the defendant's objection and the government's response to the objection. The government does not believe that the creation of pseudo-counts results in an unduly harsh sentence in this case, nor does the government concur with the rationale propounded by the defendant in his objection. The government's concurrence with the defendant's objection is based on the specific factual circumstances in the case, wherein the defendant solicited *one agent* who represented that he had two children. The government submits that different factual scenarios could arise in which the only "victims" or "minors" are fictitious, where the creation of pseudo-counts would be appropriate. One example of such a situation would be if a defendant were communicating about engaging in sexual activity with the children with multiple undercover agents who were posing as children or parents of children. As that is not the situation in this case, the government maintains that the creation of pseudo-counts is not appropriate.

However, the government believes that the incarceration range of 22 to 28 years that was agreed upon by the parties appropriately accounts for all of the defendant's conduct in these cases, and specifically recommends a sentence near the middle of the agreed range of 26 years or 312 months.

## **ANALYSIS AND RECOMMENDATION OF THE UNITED STATES**

After *Booker v. United States*, district courts should engage in a three-step sentencing procedure. 543 U.S. 220 (2005). The court must first determine the applicable guideline range, then consider whether a departure from that guideline range is appropriate, and finally consider the applicable guideline range, "along with all of the factors listed in section 3553(a)" to determine the sentence to impose. The central command of 18 U.S. C. § 3553 (a) directs courts to impose a sentence sufficient, but not greater than necessary, to meet the goals of sentencing set forth in 18 U.S.C. § 3553(a).

In Defendant's Sentencing Memorandum, he requests that the Court impose a sentence of 264 months, the bottom of the range agreed upon by the parties, followed by a five-year term of supervised release. As a basis for this request, the defendant asks the Court to consider (1) the personal crises that he suffered prior to becoming involved in the instant offenses; (2) his mental health issues; (3) the fact that a law enforcement's designation of the age of one of the fictitious victims increased the guideline range by eight levels; and (4) that as a first time offender he has a lower risk for recidivism.

For the reasons that are more fully discussed below, the government submits that a sentence near the middle of the stipulated sentencing range would be sufficient but not greater than necessary to fulfill the statutory goals of sentencing. Upon consideration of the full scope of the defendant's criminal conduct, the dangerousness inherent in his conduct, and the flagrant

4

disregard he has displayed for the seriousness of his actions, a very lengthy term of incarceration is warranted

I.  **Guidelines Calculation and Possible Departure**

As indicated above, the government believes that the sentencing guidelines range calculated by the Probation Officer may be technically correct. However, given the ambiguous nature of the language of the special instruction located in U.S.S.G. § 2G1.3(d)(1) and the fact that the minors in the Southern District coercion and enticement count were fictitious, the government agrees with the position of the defendant that this special instruction should not be applied in this case. Thus, the government submits that the appropriate sentencing guideline range in this case is 210 to 268 months, based on a total offense level of 37 and a criminal history category I.

The government concurs in the Probation Officer's recommendation that there are no bases that warrant a departure from the guidelines range in this case. Furthermore, upon weighing the possible bases for deviation that are identified in the PSR, the government does not believe that the defendant's positive family history and the fact that he has held a string of jobs outweigh the seriousness of the offenses he has committed. Indeed, it is the position of the government, that the defendant's offenses are so serious that an upward deviation from the guideline range is appropriate.

II.  **Section 3553(a) Factors**

Pursuant to 18 U.S.C. § 3553(a), there are seven factors the court is to consider during sentencing: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes of sentencing; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the

Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. Pursuant to the following analysis of the § 3553(a) sentencing factors that the government believes are most relevant in this case, the government submits that a sentence of 312 months of incarceration is warranted in this case.

<u>Nature and Circumstances of the Offense/ History and Characteristics of the Defendant</u>

In cases involving the sexual exploitation of children, the Court is frequently faced with a difficult balancing act, as defendants who commit crimes of this nature often do not have significant criminal histories, have lived otherwise productive lives, and sometimes have endured victimization themselves as children. These cases thus often require weighing a defendant's positive and/or difficult personal history against horrific crimes that cause unimaginable harm to the most vulnerable of victims. Such is the situation in this case. Although the government acknowledges both the difficulties that the defendant has faced in his life and his positive achievements, this history cannot outweigh the vile and dangerous nature of his crimes. The government thus submits that proper balancing of the competing sides of this sentencing factor weigh in favor of a sentence near the middle of the stipulated sentencing range.

A. Nature and Circumstances of the Offense

As evidenced by the Indictments and statement of facts that was read at the change of plea hearing, the defendant engaged in an varied and continuous course of conduct involving the sexual exploitation of children. The defendant's actions included criminal offenses that ranged from the simple possession of child pornography to the actual enticement of a 14-year-old boy to engage in sex acts, as well as communications with other purported fathers about engaging in sex acts with children, that were not necessarily criminal, but were deeply disturbing nonetheless.

6

Indeed, the defendant's chats, e-mails, and text messages that were discovered during the course of the investigation in this case reveal an individual with a horrifyingly dangerous mentality toward the sexual abuse of children. This was not a defendant who happened to encounter a 14-year-old online and engage in sex with the child without full knowledge of the child's age. Nor is this a defendant who simply went along with an undercover officer's suggestion of engaging in sex acts with the officer's fictitious children. The defendant also was not an individual who happened to stumble upon child pornography while looking for adult pornography and was inexplicably unable to look away. This was a dangerous sexual predator, whose own words display the frightening and disgusting things he fantasized about doing to young, vulnerable children.

The defendant's criminal activities were discovered by law enforcement as a result of his online communications with an undercover officer who was posing as the foster father of two minor boys. When the defendant travelled from Lima, Ohio to Columbus, Ohio to engage in sexual activity with the two young boys, he was arrested and the i-phone that he possessed was seized. During subsequent investigation of the defendant's i-phone and e-mail account, law enforcement discovered not only numerous child pornography files, but also e-mail and text conversations that the defendant had engaged in with other pedophiles. These conversations involved trading child pornography images and graphic discussions about engaging in various sex acts with very young children. One of the text exchanges that officers recovered from the defendant's i-phone was with an individual in New York who claimed to be the father of a boy who appeared to be less than 10 years of age. After learning that the father was engaging in oral sex with his son on a regular basis, the defendant requested pictures and/or Skype video of the sexual activity. After several conversations about the possibility of a Skype or webcam video

showing the father engaging in oral sex with his son, on January 28, 2013, the defendant appeared to have a phone conversation with the father during which he listened to the father force the boy to perform oral sex on him.  In subsequent text conversations, the defendant and the father discussed their fantasies about raping young children and various bestiality scenarios.  These conversations eventually led to the defendant encouraging the father to rape his son and one text conversation appears to show that the defendant listened to that exact activity:

> Father: u got me so hot. if he didnt have school tomorrow i think i would just stick my dick up his ass right now lol
> Defendant: Would you really??
> Defendant: If I stop responding at all it's bc my phone died lol
> Father: yeah. im so fucking horny right now
> Defendant: Hot babe. Do it :) I wouldn't mind listening to that :) he is gonna whine some tho. Use a LOT of lube
> Father: shit im so fucking tempted
> Defendant: Do it but call me if u do
> Father: lol ur such a bad influence on me
> Defendant: U going to?? :)
> Father: if u tell me to i will
> Defendant: Do it
> Father: Fuck. I don't have any lube but I've got vaseline
> Defendant: Finger his hole a lol [sic] bit first. Vaseline will work. Call me when u start
> Father: fuck im about to rape my son
> Defendant: Do it babe :)

After an approximately eight-minute break in the text message exchange, the father then sent the defendant a text message stating "shit i cant believe i just did that."  The defendant assured the father that the boy would be fine, and the father repeatedly stated "i can't believe u couldnt hear him. he was practically screaming."  When the father indicated that the boy was "shaken up. lol he just got raped", the defendant again assured the father that the boy would be okay, stating "Yea, but don't sound so negative about it. He is ok. He just wasn't ready for it lol

8

he was practically still asleep when u shoved ur cock in him. It felt amazing tho didn't it? I told you it would baby :)"[3]

This is just one example of the numerous disturbing exchanges that were discovered during the course of the investigation in this case. The various communications in which the defendant engaged, revealed both the depth of the depravity of his thoughts and the other illegal activities in which he engaged. It was through the investigation of the defendant's text messages that law enforcement discovered that the defendant had acted on his vile sexual desires, engaging in an ongoing text conversation with a 14-year-old boy, encouraging the boy to send him "sexy pics," and travelling to the boy's aunt's house where they engaged in various sexual activities. While the defendant may seek to downplay the gravity of his actions with this child by claiming that it was the child's suggestion that they have sex (PSR ¶ 38), the defendant was the adult in the situation. He should have, and in fact did, know better, as evidenced by the text messages he sent the boy, indicating that he was nervous because the boy was underage and could be the police. The defendant took advantage of this young and vulnerable child and has exposed that child to ongoing psychological and physical trauma, as described in the attached Victim Impact Statement prepared by the boy's mother. In his words and in his actions, the defendant has shown that he is a predator and a danger to the most vulnerable members of our society. His offenses are deserving of at least the sentence the government is recommending.

B. History and characteristics of the defendant

In Defendant's Sentencing Memo, he has fully discussed his background and history, highlighting his supportive childhood background, his community involvement, his mental

---

[3] The quoted portion of the text message exchanges between the defendant and the father are attached as exhibit 1. Detective Marcus Penwell will be present at the sentencing hearing to provide the Court with any additional necessary information regarding these or any other text messages or e-mails that were recovered from the defendant phone and e-mail account.

9

health issues, and his consistent work history. (Defendant's Sentencing Memo at 4-5). While the government does not dispute that some of the issues the defendant has raised regarding his background may be mitigating factors in determining a sentence, the government submits that proper balancing of any of those mitigating factors against the heinous nature of his offenses warrant a sentence of 312 months.

That those who seek out child pornography frequently have mental, emotional and/or social issues and difficulties is a fact of which this Court is likely all too well aware. Without seeking to minimize the family trauma that the defendant has experienced, the government notes that the defendant was raised in a loving, almost idealistic home. He had, and still has, the love and support (both emotional and financial) of his parents and his step-father, he was not subjected to any abuse as a child, and is an outgoing and charismatic person with many friends. While he did suffer losses and emotional difficulties when his loved ones became ill, there is simply nothing in his background that can excuse or explain his decision to throw away all that he had been given in his life to prey upon young children.

<u>The Statutory Purposes of 3553(a)</u>

A.    Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense

The government submits that a term of incarceration of 312 months is necessary to satisfy all of these goals. As discussed more fully above, the defendant's offenses are some of the most serious and disturbing crimes that can be committed against a child. He has gone far beyond the realm of the fantasy world of child pornography and online chatting with minors. He sought out minors as sexual partners, successfully finding a vulnerable 14-year-old boy to prey upon. He engaged in explicit conversations with an individual he believed to be the father of two young boys, making plans to sexually abuse the children with the supposed father and travelling

10

from Lima to Columbus to do so.  He utilized the internet to find others who shared his deviant interest, trading child pornography with them, encouraging them to sexually abuse their children, and sharing disturbing fantasies about violently raping young children.  All of these facts clearly demonstrate that this is a very serious offense that calls for a very serious sentence.

The government further submits that the need to promote respect for the law is an important consideration in this case.  The defendant, after being arrested on the Southern District charges, was held at the Franklin County jail.  During that time, he sought to conceal evidence of his criminal activities that were not yet known to law enforcement, by telling a friend to discard a phone that police had not yet located.  When the phone was finally recovered from the landfill, little was able to be recovered from it, but agents were able to determine that the defendant had used it to communicate with an individual with whom he had discussed engaging in sexual activity with children.  It is thus clear that the defendant was seeking to prevent law enforcement from discovering this evidence and the actions that he had engaged in with the other individual.  His attempt to thwart law enforcement efforts demonstrates his complete disregard for the law and his belief that he should be above the law.  A serious sentence is necessary to disabuse the defendant of such beliefs.

B. Afford Adequate Deterrence to Criminal Conduct

One of the factors the court must consider in imposing sentence is the need for the sentence to "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B).  This factor includes the deterrence of the defendant in the instant case, as well as those who may consider similar offenses in the future.

The government submits that the imposition of a term of incarceration in the middle of the stipulated sentencing range would be an appropriate specific deterrence measure in this case.

11

The need for deterrence is heightened in this case, where the defendant engaged in ongoing and escalating offenses involving the sexual exploitation of children. His behavior indicates that very serious repercussions are necessary to impart to the defendant the gravity of his actions and the inevitable outcome of any future similar acts, and thus prevent the defendant from going down a similar path in the future.

Furthermore, the government believes that the sentence in this case will deter other potential defendants by sending a clear message: Individuals who engage in this criminal conduct in the Southern District of Ohio will face the severe and lengthy prison sentences mandated by Congress and anticipated by the sentencing guidelines.

    C.       Protection of the Public from Future Crimes of the Defendant

The nature of the defendant's actions in this case created a very serious risk to the most vulnerable members of our society. As discussed above, he has repeatedly targeted the most vulnerable children and sought to abuse them for his own prurient interests. The violent sexual acts that he described in the various e-mails and text messages that the government has reviewed reveal an individual who is capable of unspeakable depravity and lacks any sense of understanding for the deep mental and emotional harm that his actions create. Despite his lack of criminal history, the government has deep concerns regarding the defendant's dangerousness in light of the nature of his offenses and the mindset demonstrated in his communications. The government believes that a sentence of 312 months is thus necessary to protect the public, particularly the young vulnerable children upon whom the defendant has repeatedly preyed.

    D.       Providing the defendant with needed training, medical care, or other correctional treatment

In light of the nature of the offense, the government suggests that sex offender treatment would be beneficial to the defendant, and recommends that the defendant be placed in a facility

that may provide these treatment options. There are a number of Bureau of Prison institutions which provides Sex Offender Management Program (SOMP) or Sex Offender Treatment Programs (SOTP), and the government makes the following representations to the Court regarding those programs.

There are currently eight BOP facilities that offer sex offender treatment programs. The only high intensity residential program (SOTP-R) is located at FMC Devens, MA. The BOP further has five moderate intensity sex offender treatment programs (SOTP-NR) at various security levels: USP Tucson (high); FCI Marianna, FL; USP Marion, IL; FCI Petersburg, VA (all medium); Seagoville, TX; FCI Englewood, CO; and FSL Elkton, OH (all low). The United States believes that the completion of either the SOMP or SOPT program by the defendant will serve the goals of treatment and urges the Court to recommend placement at a facility that offers such programs.

## **CONCLUSION**

For the foregoing reasons, the United States concurs with the term of incarceration recommended by the Probation Officer, and submits that a sentence of 312 months of incarceration, followed by a term of supervised release of ten years, would be sufficient but not greater than necessary to meet the statutory goals of sentencing in this case.

Respectfully submitted,

CARTER M. STEWART
United States Attorney


s/Heather A. Hill
HEATHER A. HILL (6291633)
Assistant United States Attorney
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
(614)469-5715
Fax: (614)469-5653
Heather.Hill@usdoj.gov


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Sentencing Memorandum was served this 11th day of April, 2014, electronically upon: Karen Held Phipps, Esq., attorney for Addison R. Richardson.

s/Heather A. Hill
HEATHER A. HILL (6291633)
Assistant United States Attorney